This is a declaratory judgment action that was filed one day after a settlement was approved in state court and 76 days before an excess judgment was entered that might have implicated other coverage for GEICO. I think the question here is an interesting one. Neither party has been able to cite a case in which a district court simply did not decide a motion to dismiss based on the abstention doctrine, but went ahead instead even though that motion had been fully briefed and entered summary judgment. I would suggest that there are a couple of ways to look at this respectfully. The first is, is the failure to decide in itself error? Largely because what we know is that appellate review of these sorts of decisions is granted. That that review is for abuse of discretion. That there is no exercise of discretion when there is no judgment or statement entered or order entered even. And then finally, if that can become the law, then district courts can insulate themselves from appellate review on these sorts of things just by not deciding abstention motions or, I suppose, having a court conclude that they must have decided it in a way that was contrary to the motion. Don't you think it was implicitly denied? Well, Your Honor, I think... By going ahead and issuing the summary judgment decision, the court seems to, at least implicitly, have rejected your argument. Well, it decided everything else before it in its order. It said, I'm not going to grant you any discovery. There was that motion going. There were some other things. It just simply didn't mention this. You think he might have just missed it? Well, Your Honor, I don't know whether he missed it. What I know is the record would reveal that he didn't decide it directly. Did you ask to reconsider and have a ruling on that issue? Well, the summary judgment had been issued, so no. And the appeal was taken from that. So if you do take the position that Judge Grunder suggested, it was decided, then aren't you left with the question of should it have been decided the way it was? And I would suggest that this is one of those cases. There's a parallel state action. The other side has a different view of that because it's broader. But the very issue, the single issue, whether there could be stacking of this policy is in the state action, which was filed basically within five days of when it was possible to file it. This court's previous decisions say that even a five-month lag is not one that would overcome a filing when it's filed as soon as possible. And so we are left with, it seems to me, the question of should the district court have abstained from deciding this case on the merits of the abstention motion? Now, Geico makes a number of points about this. First, it says you can glean from the record what the basis for the denial was. But the record is quite sparse in this case. This is a baby case. It's less than, it's barely over six months old when it's finally terminated. The only thing that's been filed in it, or a complaint, an answer, motion for summary judgment, some extensions of time to respond to the summary judgment, a request for discovery, and then ultimately the summary judgment motions. The summary judgment motion is decided, again, silently, as to the motion to dismiss. And that's the record. And you could suggest that a district court could have said, well, this case is so far along here that we simply shouldn't do it. And that would be one thing you could glean from a record different than this one. But this case is not so far along. How about the motion for summary judgments fully briefed before the state court action was filed and it's ripe for decision? Maybe I've already worked on the opinion. The normal efficiency, the law is clear in Missouri. So the normal efficiency arguments for abstaining don't apply. I know he didn't say any of that, so we'd have to impute a rationale in addition to imputing a decision. But suppose that were the rationale, would that be an abuse of discretion? Well, the state court judgment is entered on January the 24th. On January the 17th, there is a motion which was granted for more time to respond to the summary judgment motion. So the district court is aware, one would presume, of the existence of the state court judgment, excess judgment, which would have made the declaratory judgment at least ripe. One of the questions you have here is that GEICO faces absolutely no financial risk until there is an excess judgment entered. The trial court in Missouri could easily have said, well, we're not going to enter an excess judgment or the $100,000 is sufficient. And so the declaratory judgment action here is filed well before there's any knowledge that there's actually going to be a potential exposure, depending upon how the policy is written. So I suppose in that situation, Your Honor, Judge Colleton, you could... So are you saying there was no case or controversy, really, in the federal case? Well, I certainly didn't say it in the brief. I just said it. You didn't argue that at the time. Okay. Well, that seemed to be what you were saying, that the declaratory judgment action was premature. There was no real dispute yet. Well, I guess I was responding to your question. If it's a fully addressed summary judgment motion, would that overcome the need to decide? Well, that's just the facts of the case, right? Yes, sir. And as it played out here, nobody questioned the federal jurisdiction, and so the summary judgment motion was fully briefed, as I understand it, before the state action was filed. Do I have that timeline right? Well, Your Honor, the state action is an interesting state action because it begins with a motion to enforce a settlement in which there's a counterclaim for wrongful death, which predates everything. And then on November the 7th of 2017, there is an approval, a state court approval, of the wrongful death settlement. And that settlement, GEICO pays $100,000, and it also then, part of the settlement is, is that the driver in this vehicle is not going to be personally liable, but if there's any other insurance or other assets of the parents, then those could be attached if there's a judgment entered. So this is all going on before the state court judgment is even approving the wrongful death case happens. And then the very next day, GEICO says, well, we want to know what the policy says. So I guess I would next suggest that the first filed rule, this is a classic preemptive strike that this court talked about in Northwest Airlines' case. Let's rush to the federal courthouse, have a single issue of the many that are still pending decided in the federal court. And in those circumstances where the system, I would respectfully suggest, has been gamed in order to get federal decision before the state court can decide the state law issues, then the courts have not looked kindly on that. And then finally, on this particular issue, it seems to me that comedy would suggest that where you have an opportunity to have a state court decide a state law issue, that it's there and could be invoked for that purpose, that the federal courts ought to allow that to happen. I know you regularly are required to make eerie doctrine judgments about what state law is. But most of the cases that I have understood say we don't like doing that unless we have to. And so here you have an opportunity to avoid making an eerie doctrine judgment because the state court will be able to do this. And why does it matter? Because there are a series of cases that lead up to this that say you can stack uninsured motorist coverage between policies. The next one out of the Supreme Court of Missouri says you can stack uninsured motorists within a single policy if there's more than one vehicle. The next one, that's Ritchie. The next one is Durbin, which says you can stack liability policies, not uninsured motorist policies, between more than one individual policy. And so the question that's left open, as you sort of graph this along, is the one that's here. Can you stack liability policies intra-policy, where there's more than one vehicle insured in a single policy? And that's an issue of state law that ought to be respectfully decided by a state court when there is a vehicle available to do that. How about this Chandler case? Well, Chandler is a case that, if you read it quickly, gets you to the conclusion that it has been decided. But there's not a non-owned vehicle in Chandler. And, you know, lawyers read insurance policies like Talmudic scholars, I think, from time to time. But you end up with, if you read the other insurance provision, it says any insurance we provide for losses arising out of the ownership, maintenance, or use of a vehicle you, and you is defined as the policyholder, which is not a defined term, do not own, shall be excess over any other valid collectible insurance. Well, that use of a vehicle you do not own is not in Chandler. Also not in Chandler is the plural of the word limits. It's limit used in Chandler. And this would suggest, under the way Missouri courts tend to read these policies, that somebody would properly think that there is more than one limit that's a plural. And if it's not you, the policyholder, driving a vehicle you do not own, there is an ambiguity or at least reasonable doubt. And those are two separate things under Missouri law, under the Seed case. And reasonable doubt would lead you to want to discover, this is the second point, what the insurance company had done historically with regard to these. And we asked for discovery in that regard that was denied. And then secondarily, if that's the case, then the ambiguity would be resolved under Missouri law against GEICO. Is the ambiguity resolved by the policy language itself when it says that coverage is provided to you and a relative who resides with you? It does say that. It doesn't say resides with you. Well, that's what it describes relative as. If you say it says it, or your relative, and then if you look at it, it's a person related who resides with you in the defined terms. Well, that's only within non-owned auto. But the other insurance exclusion uses the word you. And you is defined. The policyholder, which is not defined, named in the declarations. And what the declarations say is, these are the insured, mom and dad. And then it has additional driver. Well, is the additional driver a policyholder? Well, we don't know, but it's pretty clear that the direct insured is only mom and dad. And so if you read all this stuff together, it leaves a cloud of confusion. And a cloud of confusion, it seems to me, and that's what Missouri cases say. You can't just grab, and this is what the district judge did, you just don't grab one of the pieces of the policy. And we'll concede that the limit of liability language, if read alone in a vacuum, we're dead. But you have to read the whole policy. And if you read the whole policy, you're left with a head scratcher. And head scratchers mean that at least the ambiguity is resolved against the author. I probably have used up more time than I intended to. Well, you may save the minute 45 for rebuttal, if you'd like. Thank you, Your Honor. Mr. Beck will have other things, I'm sure, to say. Very well. We'll hear from you, Mr. Beck. Good morning. I represent GEICO, and I want to start today responding on the issue of abstention to some of the arguments that were just raised. It's understandable that appellants want to make this into a jurisdictional issue, but to be clear, it is not a jurisdictional issue. The Declaratory Judgment Act confers no jurisdiction. There's no question, and it was never challenged, that the district court here had proper subject matter jurisdiction the entire time. What the Declaratory Judgment Act does is empower a district court to exercise its remedial powers, which it did. Importantly here, the rule is retention. That is the default. Abstention is an exception to that rule. So it is not a case where you have a line in the middle, and on one side is retention and on one side is abstention. The rule is retention. We have cases that discuss when a district court may abuse its discretion by abstaining, but there really are very few, if any, cases that discuss a district court abusing its discretion by choosing to follow the rule. Well, one of them is capital indemnity against Haverfield. I agree, Your Honor. Haverfield is an outlier. What do you mean by outlier? I'll explain that. So Haverfield is not just, in my opinion, distinguishable, but in this court's opinion, distinguishable. In Haverfield, there was a direct circuit split amongst the Missouri appellate courts as to a particular legal issue that was core in Haverfield, and the court opted in that circumstance, under the Scottsdale or Brill Hart factors, to say, hey, this is something that needs to be decided by a Missouri state court, because we have two appellate courts in Missouri that are reaching different conclusions. A very different circumstance is present here in that we're not facing a situation where we have different authority. I would say we're not facing a situation where we have no authority. We have multiple Missouri cases that all stand for the proposition that you cannot stack bodily injury liability limits within a single policy. Well, what makes you think Brill Hart and our cases should be limited to situations where there's a conflict in intermediate state courts? I do not believe that they are limited so, Your Honor. I would say that it's a factor, the state's interest in resolving the dispute. The factor weighs heavily. Maybe that's stronger. It weighs heavily. If there's a circuit split, the state may have a very strong interest. But why isn't it still uneconomical for the federal court to proceed when there's a state court suit raising the same issue under state law? And I would respond to this this way. The implication that Geico somehow did something it shouldn't have done by filing this case. No, I'm not getting into whether you did anything wrong. I'm just saying isn't that the law, that it's uneconomical for the federal court to decide something when there's a state court case pending raising the same issue and it's a state law issue? It is a factor to be considered under both Scottsdale or Brill Hart. However, it is not true that having a state court action automatically means that a federal action should simply abstain for judicial economy. Especially in the circumstance here where before the state court action is even filed, we have a fully briefed motion for summary judgment on a discreet legal issue in front of the federal district court. It is ready to be ruled. It is actually not economical for that federal court to not go ahead and rule on that, especially when Missouri law controls it. Well, then why don't you address the point you were going to make about Geico's timing? Sure. And whether that should be a factor. I think that the timing overall is a factor to be considered. It is not dispositive under the first filed rule that whoever gets there first is automatically entitled to stay. It is, however, inaccurate to say that appellants could not have filed an action. True, they needed to get a judgment. They needed that judgment to file an equitable garnishment, but nothing precluded appellants from filing a declaratory judgment action. The parties entered into an agreement that specifically acknowledged, hey, we have a dispute here on stacking. We're going to get this agreement, and then we're obviously going to have to resolve the dispute. Shortly after that agreement was executed and it needed to be approved because it involved a wrongful death case, Geico filed that question as a D.J. in a court of competent jurisdiction. Plaintiffs chose to do nothing. At that moment in time, they could have filed a D.J. if they wanted to. They instead waited to get the judgment and bring it as an equitable garnishment. Geico is not required under the law to simply sit around and wait for that garnishment to be filed to have this case litigated. It is, in fact, in my opinion, one of the entire purposes of the Declaratory Judgment Act. What do you think we should do about the fact that the district court never ruled on the motion? There are multiple cases, all of which are cited in our brief, that your Honor's point is correct. The district court need not rule on every single thing on its docket. The entry of final judgment when other motions are pending is an implied denial of all of those other pending motions. What about when the motion requires the exercise of discretion and the court of appeals is supposed to review the soundness of that exercise of discretion? How do we review that when we don't have any ruling or explanation from the district court? With respect to the district court's exercise of discretion in choosing to retain, that discretion is obviously very broad. This court can affirm that based on the record, and there are cases from this court that hold that, that it is not necessary for every discretionary decision that a district court makes to be explained in order to be reviewed and affirmed. I would say, your Honor, that it is true that it would be difficult for this court to hold that the district court abused its discretion without some findings of fact and conclusions of law. To the extent that the court doesn't... So why shouldn't we remand this then and get an explanation and then do the proper review? There's two reasons, your Honor. One, I believe that this claim has been waived because, as a general principle, you can't show up in an appellate court and complain about something, an issue, that you never raised in the district court. Appellants had multiple opportunities to ask the district court to provide its reasoning on its decision to retain. Could have done it in their motion. Could have done it after judgment was entered as a motion to amend the judgment. Simply request that the district court provide its reasoning for purposes of review. Do we have any cases that say once a judgment's entered and the district court erred that the unsuccessful parties required to go ask the court to do more? I don't think we have. I'm not aware of a case that's directly on point. I would say, however, that there are multiple cases that discuss if you want to complain about an issue on appeal, you need to bring that issue to the district court's attention and give the district court the opportunity to address it. But they filed a motion. They did file a motion. But I do think under the rules they could have filed a motion to amend the judgment or to clarify the judgment and simply said, we think you're wrong, we want to have your reasoning. Yeah, they could have, but you said they've waived it by not doing that. And I wonder if we've got any case that says you're required to. Well, the law clearly puts the burden on them with respect to their review. And so I think if they're going to argue that it was an abuse of discretion and argue that it's an abuse because there is no specific findings, they have the obligation to raise that issue. What's your second point after waiver? The other thing is this court can absolutely affirm the district court's proper exercise of its discretion on the record. And if we look, the assertion that this case is in its infancy sounds reasonable. But with respect to the factors under either Scottsdale or Brillhart, we know everything we need to know. And in fact, there was a dispute between the parties. Is it Scottsdale? Is it Brillhart? I would respectfully suggest that it does not matter. Under either of those two tests, it would have likely been abuse of discretion if the court had chosen to abstain. This court is free to review the information before it in the record and determine based on those factors that the court reasonably exercised its discretion. And I would cite to the court with respect to reasonably... It would have been an abuse of discretion for the district court to say, this is an issue of state law that should be settled in state court. And so I'm going to hold off and let the state court decide it? Yes, because that's an incorrect statement of the law. Because Missouri law is clear on the issue before the court. It is not a disputed issue of Missouri law. And I do believe it would have... Obviously, we don't have that question before the court. And that's why I said it would likely have been. I think it would arguably have been an abuse of discretion for this court to abstain. We have three or four cases directly on point. It's a straightforward issue. It was fully briefed. Plaintiffs filed an equitable garnishment action four or five months later, raising the exact same issue. I believe the district court properly retained and exercised its jurisdiction. With respect to the stacking argument, Your Honor, I just want to address this. The other insurance clause is not relevant. The policy's unambiguous terms provide that the limit of... And I'm going to quote from the policy here because I think it's valuable. The limit in the declarations applies regardless of the number of autos to which the policy applies. The conditions in the policy state, if this policy covers two or more autos, the limit of coverage applies separately to each. If you look at Missouri law, it's very clear that your coverage analysis, your stacking analysis here is two steps. The first step is, is there other available coverage to stack? If there isn't, you're done as long as the limit of liability section is ambiguous. Unambiguous, pardon me. An appellant has conceded that it is unambiguous. There is simply nothing to stack. When would you have something to stack? Any multi-policy case. You have two policies, whether it's UM, UIM, or BI, you might have something to stack. Any single policy case where you're talking about UM or UIM. And that's because those coverages follow the person and float and don't follow the vehicle. Or, and I've not seen this case, but a two-policy case, I'm sorry, a single policy case that was bodily injury coverage, where two or more listed vehicles were involved in the same accident. When you look at Missouri case law, that scheme becomes very apparent. That's why the Chandler court noted it doesn't matter if it's owned or not owned, because we never reach the other insurance clause. It would be a materially different question if this was two policies. That's Chandler. Other cases that hold the exact same thing cited in the briefing are Farmers v. Wilson, the 1983 case of Hendrickson, and the O'Rourke case. All four of those cases are single policy bodily injury stacking cases. In each one of those cases, the court determined there is nothing to stack. There is no other available coverage to consider stacking. So the other insurance clause, which is step two, is never reached. I want to look at the cases because Appellant talked a little bit about the history. We have multiple two-policy cases, Niswonger, Daugherty from this court, and Durbin and DiMeo from this court. All of those involve more than one policy. Some are UM, UIM, some are BI. In every one of those cases, the court said, multiple policies, something to stack, let's look at the other insurance clause. We also have single policy cases that are UM and UIM. Those are cases like Ritchie and Seek. Those cases said, yes, here we have something to stack because it's UM or UIM, multiple listed vehicles, so perhaps coverage for both. We look at the other insurance clause to see if they stack. When we get to one policy bodily injury cases, Missouri law is very clear. And in fact, the O'Rourke and the Farmers case are particularly interesting because in both those cases, they started out as multiple policy bodily injury stacking cases. The court first analyzed the threshold issue of, do these other policies apply? Determined they did not, which whittled it down to one policy, and all of those cases said very distinctly, doesn't stack. I think the Farmers v. Wilson court, Kate, said it best. And this is a quote from that case. Before stacking can be an issue, there must first be applicable coverages to stack. Therefore, in any case potentially involving stacked coverages, the initial step for both insured and all potential insurers should be an analysis of whether there are multiple applicable coverages. That's exactly what Missouri courts did in Chandler, in O'Rourke, in Farmers v. Wilson, and in Hendrickson. In all those cases, single policy, intra-policy, bodily injury stacking, the courts concluded, there's nothing here to stack. I would also say at the end of my time here, to the extent that the court considers the other insurance clause, this case is not one where we're talking about a non-owned auto. Appellant concedes in their reply that this was an owned auto. They attempt to make some ambiguity out of the you do not own language in the other insurance clause. You is defined as the policyholder identified in the declarations page. When you look at that page, the named insureds are Brian and Christina Isaacson. Those are the people who owned the car involved in this accident. To make an argument that that doesn't qualify as you is to stretch the law to create an ambiguity where one does not exist. Thank you. All right. Thank you for your argument. Mr. Robertson, you may proceed in rebuttal. I don't have much, your honors. I do want to say, though, that I think the difference in the way you determine abuse of discretion is quite different in Brillhart and in Scottsdale. And the reason is, in most of the cases that we've been talking about, there hasn't been a pure parallel state action invoking state law or federal law. Brillhart is that case. And the language in there is surprisingly strong. It basically says you ought not to decide this case if you have an opportunity to let the state do it. The fight over whether or not the policy says one thing or another, it seems to me, is best decided in Missouri, where the state courts are required to interpret the state law. And I would respectfully suggest that they ought to be given that opportunity where it exists as easily gotten to as this one is. And finally, back to the original point, I think the questions for both of us have indicated that the court simply has no way of knowing how Judge Wimes was thinking or if he was even thinking about this abstention motion. And until it knows, it certainly is deprived of its responsibility to review. And to the extent that a remand would get at least that reasoning, we then would be in a position to discuss whether or not the judge properly applied Brillhart or some other case that he thought controlled. Leaving five seconds, I will walk away. Thank you both for your time. The motion is submitted. The court will file an opinion in due course. Thank you to both counsel. You are excused.